UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-85-0130 SC |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | DEFENDANT'S RULE 35 |
| v. | ) | MOTION TO CORRECT |
| | ) | <u>ILLEGAL SENTENCE</u> |
| JON PERROTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.  INTRODUCTION**

This matter comes before the Court on Defendant John Perroton's Rule 35 Motion to Correct Illegal Sentence ("Motion"). Docket No. 78.  The Government opposed the Motion and Perroton submitted a Reply.  Docket Nos. 90, 91.  For the reasons stated herein, Perroton's Motion is DENIED.

**II.  BACKGROUND**

On February 20, 1985, Perroton was charged in a twenty-seven count indictment for various crimes, including loan fraud and bank larceny.  Opp'n at 2.  On April 8, 1985, Perroton pleaded guilty to a superceding information charging three counts: (1) bank larceny, 18 U.S.C. § 2113(b); (2) interstate transportation of monies taken by fraud, 18 U.S.C. § 2314; and (3) bank fraud, 18 U.S.C. § 1344.  <u>See</u> Presentence Report ("PSR"), Docket No. 79,

filed separately under seal.

Perroton was subsequently sentenced to 10 years imprisonment on Count 1, 10 years on Count 2, and 5 years on Count 3. The sentence in Count 2 ran consecutively to the sentence in Count 1 and the sentence in Count 3 ran concurrently to that on Count 2. Accordingly, Perroton was sentenced to a total of 20 years imprisonment. In addition, the Court ordered restitution in the amount of $10,000,000.

Perroton did not appeal any aspect of the judgment. In the subsequent years, however, Perroton unsuccessfully challenged his sentence numerous times. On December 8, 1987, this Court denied Perroton's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 and his motion to modify his sentence. Perroton appealed this denial, and the Ninth Circuit dismissed his appeal for lack of a timely notice of appeal. See United States v. Perroton, No. 88-2674 (9th Cir. June 1, 1988). On November 9, 1990, this Court denied Perroton's motion to correct his written judgment under Federal Rule of Criminal Procedure 36. Perroton appealed this decision and the Ninth Circuit, on January 13, 1992, affirmed. On February 6, 1992, this Court denied a second petition for writ of habeas corpus. Perroton appealed this denial and the Ninth Circuit remanded the petition to this Court for dismissal after finding that the claims raised by Perroton in his second petition were either successive or abusive. See United States v. Perroton, No. 92-15427, 1993 WL 140609, at *1 (9th Cir. May 4, 1993).

Perroton now raises two challenges: (1) that the sentence of

-2-

1 imprisonment reflected in the written order is illegal because it
2 conflicts with the sentence imposed during the sentencing hearing
3 and, (2) that the restitution order is illegal because the Court
4 improperly delegated authority to the probation office, failed to
5 consider the statutory factors, and imposed restitution for
6 conduct for which Perroton was not convicted.

### III. LEGAL STANDARD

At the time Perroton was sentenced, Federal Rule of Criminal Procedure 35 stated that "a court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of a sentence." Fed. R. Crim. P. 35(a).[1] "Rule 35 distinguishes among motions to reduce or correct an 'illegal' sentence, a lawful sentence, and a 'sentence imposed in an illegal manner.'" United States v. Fowler, 794 F.2d 1446, 1449 (9th Cir. 1986). "An illegal sentence may be corrected at any time, but a motion to reduce a lawful sentence or to correct a sentence imposed in an illegal manner must be made within the 120-day period prescribed by Rule 35." United States v. Stump, 914 F.2d 170, 172 (9th Cir. 1990). "[A]n illegal sentence [is] one which is not authorized by the judgment of conviction, or is in excess of the permissible statutory penalty for the crime, or is in violation of the

---

[1] Federal Rule of Criminal Procedure 35 was revised in 1985 with the federal sentencing guidelines. The revised rule applies to sentences for offenses committed after November 1, 1987. See Sentencing Act of 1987, Pub. L. No. 100-182, § 2(a), 101 Stat. 1266; United States v. Stump, 914 F.2d 170, 172 n.1 (9th Cir. 1990).

-3-

1  Constitution." <u>United States v. Johnson</u>, 988 F.2d 941, 943 (9th
2  Cir. 1993).
3  In addition, "because former Rule 35(a) authorized challenges
4  to sentences that exceeded statutorily-imposed limits, challenges
5  to the legality of restitution orders were cognizable under the
6  rule." <u>United States v. Landrum</u>, 93 F.3d 122, 125 (4th Cir.
7  1996); <u>see</u> <u>also</u> <u>Hughey v. United States</u>, 495 U.S. 411, 414 (1990)
8  (noting that petitioner had challenged his restitution order under
9  Rule 35).

## IV. DISCUSSION

### A. Alleged Disparity Between Sentence at Hearing and in Order

Perroton's first challenge is that the oral pronouncement of his sentence during the hearing was different than that in the written judgment.

> In cases where there is a direct conflict between an unambiguous oral pronouncement of sentence and the written judgment and commitment, this Court has uniformly held that the oral pronouncement, as correctly reported, must control. The only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant.

<u>United States v. Munoz-Dela Rosa</u>, 495 F.2d 253, 256 (9th Cir. 1974). Perroton asserts that at his sentencing hearing, this Court imposed a sentence of two years for Count One, for a total sentence of 12 years. It is undisputed that in the commitment order, filed several weeks later, the sentence for Count One was for ten years, for a total sentence of twenty years. Mot. Ex. C.

-4-

Perroton has raised this exact claim not once but twice before in this Court. Both times, the Court has found the claim to be without merit. See Dec. 8, 1987 Order at 9; Nov. 9, 1990 Order at 3. Perroton appealed, and the Ninth Circuit affirmed, the November 9 Order. United States v. Perroton, No. 90-10606, WL 8136, at *1 (9th Cir. Jan. 13, 1992) (finding that this Court did not clearly err in denying Perroton's claim).

As the transcript from the hearing indicates, the Court initially stated that Perroton's sentence was to be two years for Count One. June 21, 1985, Sentencing Hearing Tr., Mot. Ex. B, at 10:15-17 ("Sentencing Tr."). At the end of the hearing, however, when the Assistant United States Attorney ("AUSA") asked the Court to confirm Perroton's sentence, the Court clearly stated that the sentence for Count 1 was ten years. The entire colloquy was as follows:

> AUSA: Your Honor, excuse me. Perhaps Mr. Perroton should remain for this. Your Honor, I am not quite sure whether or not I misheard your Honor. Did you give ten or two-
>
> The Court: Ten years to count 1, ten years to count 2. Those are consecutive; five years to count 3 concurrent with count 2.
>
> Mr. Walker [Perroton's Attorney]: I thought I heard two.
>
> The Court: Ten to count 1, ten to count 2. Those are consecutive. And count 3 is five years concurrent to count 2. It is a total of 20 years.

Nov. 9, 1990 Order at 3.

Perroton's Rule 35 Motion that his sentence was illegal is,

-5-

for the third time, DENIED.

### B. Illegality of Restitution Order

Perroton raises three arguments in support of his claim that the restitution order of $10 million was illegal. The Court addresses each in turn.

#### 1. Whether the Restitution Order Impermissibly Delegated Amount to Probation Office

"The district court may not delegate to the probation officer the determination of the amount of restitution owed." United States v. Mikaelian, 168 F.3d 380, 391 (9th Cir. 1999) (amended on other grounds by United States v. Mikaelian, 180 F.3d 1091 (9th Cir. 1999)). Perroton argues this Court did just that.

At the sentencing hearing, the Court stated: "I am going to order [Perroton] make restitution in the sum of ten million dollars or a sum to be determined by the probation office upon review of the total amount of restitution." Sentencing Tr. at 11:9-11. The Commitment Order, issued on June 21, 1985, also states that "defendant make restitution in the amount of $10,000,000.00 or a sum to be determined by the probation office." Mot. Ex. C.

It is clear from the record that all parties understood the restitution to be $10 million, regardless of any purported imprecision that Perroton now alleges. For example, in his second habeas petition, Perroton argued the restitution order of $10 million was illegal because the Court did not consider his ability to pay when it imposed the amount. Implied in such a claim is the fact that there was no ambiguity regarding the amount of

-6-

restitution.  The Ninth Circuit similarly noted the amount of restitution, stating, in one of its unpublished orders, that "Perroton contends the district court erred by not considering his ability to pay when it ordered $10,000,000 in restitution." United States v. Perroton, No. 92-15427, 1993 WL 140609, at *1 (9th Cir. May 4, 1993).  That there was never any doubt regarding the amount of restitution indicates that the Court, rather than the Probation Office, imposed the restitution amount, and that nothing was in fact delegated to the Probation Office.  For this reason, Perroton's claim is without merit.

His claim fails for an additional reason as well.  On September 6, 2006, the Probation Office recommended that the Court modify the conditions of Perroton's restitution obligation by reducing the restitution amount.  Opp'n Ex. B.  After reviewing the evidence presented in the request, the Court ordered that the restitution be reduced to $700,000.  Id.  The Court ordered the reduction based on the probation officer's determination that the total loss to Hibernia Bank, which, as the Court stated during Perroton's original sentencing hearing in 1985 was approximately $20 million, was now only $700,000.  The Probation Officer determined that the bank, in the intervening years, had been able to recover all but $700,000 of its losses, and that the restitution amount should reflect this.  See id.

The fact that Perroton's restitution order has been reduced to $700,000 moots his argument that the initial restitution order was illegal because it was delegated to the Probation Office, as the most recent restitution amount was clearly imposed by this

-7-

1  Court and it now controls.  Perroton's additional arguments
2  regarding the alleged illegality of the reduction in restitution
3  are without merit.

### 2. Whether the Court Considered Statutory Factors in Imposing Restitution

"Under the Victim and Witness Protection Act ("VWPA"), the court shall consider the losses to the victims, the defendant's financial resources, the financial needs and earning ability of the defendant and his dependents, and other factors the court deems appropriate."  Mikaelian, 168 F.3d at 390 (citing 18 U.S.C. § 3664(a)).  "The court awarding restitution is not required to make findings of fact; the record must merely reflect that the court had at its disposal information bearing on the requirements of § 3664."  Id. at 390-91.  "There must also be some indication that the judge gave thought to the relevant information."  Id. at 391 (internal quotation marks omitted).

Perroton argues that the Court, in imposing the initial restitution, failed to consider Perroton's future ability to repay this amount.  This issue, like Perroton's argument regarding the illegality of his sentence, has been conclusively adjudicated by this Court in a prior order.  In its February 6, 1992, Order, the Court stated:

> [D]efendant argues that the court failed to comply with procedures, mandated under the Victim and Witness Protection Act ("the Act"), justifying the restitution which the court ordered defendant to pay, in that the court failed "to mention, much less apply, factors such as Perroton's financial situation."  In fact, however, the sentencing transcript

-8-

> records, at pages 10-11, [is] a discussion by the court of the factors justifying restitution under the Act, which includes a specific statement by the court concerning defendant's assets. Once again, the transcript clearly refutes defendant's claim.

Feb. 6, 1992 Order at 2.

Even if the Court had not already dismissed this claim, it is clear from the record that the Court complied with all of the requirements of the VWPA.

In imposing restitution, the Court clearly stated that "according to the presentence report, he [Perroton] does have some assets, albeit the Hibernia Bank has a lien on some of those assets, which is the mini-storage facility." Sentencing Tr. at 11. The Court had information at its disposal regarding Perroton's financial condition from the presentence report and clearly gave thought to this information in relation to the requirements of § 3664. This claim by Perroton is therefore without merit.

### 3. Whether the Restitution Order Was Based on Conduct For Which Perroton Was Not Convicted

Finally, Perroton asserts that the restitution order encompassed losses stemming from conduct of which he was not convicted. Restitution may be imposed "only for the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey, 495 U.S. at 413.

Although Perroton was initially charged in a twenty-seven count indictment, he eventually pled guilty to a superceding information charging the three counts of (1) bank larceny, 18

-9-

U.S.C. § 2113(b); (2) interstate transportation of monies taken by fraud, 18 U.S.C. § 2314; and (3) bank fraud, 18 U.S.C. § 1344. See PSR.  These three counts related, at a minimum, to Crocker National Bank and Hibernia Bank.  Plea Colloquy Tr., Mot. Ex. D, at 2 ("Plea Colloquy Tr.").

Perroton's argument that the Court somehow incorporated losses incurred by other banks is contradicted by the evidence in the record.  At the sentencing hearing, the Government represented that "the victim banks all stand to lose, at the least, at the minimum, a total of ten million dollars in connection with the various schemes, and probably quite a bit more than that." Sentencing Tr. at 7.  The PSR corroborated the fact that the losses were close to $10 million, stating that they were "approximately $8,184,383."  PSR at 14.  It is important to note that although the PSR put the losses at less than $10 million, these losses were speculative, as they were based on the assumption that Hibernia Bank would be able to sell the Cal-Neva Lodge for a certain amount.[2]  See id. at 14.  Thus, the losses calculated by the PSR were not a definitive calculation.

In addition, regarding Count 3, the Court stated, in part, the following: "Perroton . . . did knowingly execute and attempt to execute a scheme and artifice to obtain approximately 20 million dollars . . . under the control . . . of Hibernia Bank." Plea Colloquy Tr. at 7.  Furthermore, Perroton stated on the

---

[2] Perroton had fraudulently secured a loan of $20 million from Hibernia Bank to purchase the Cal-Neva Lodge.  Plea Colloquy Tr. at 10.

-10-

1 record that he obtained the $20 million loan from Hibernia. <u>Id.</u>
2 at 10.  That this loan constituted part of the loss to Hibernia
3 was confirmed by the Probation Department in its request to modify
4 the restitution order.  The request stated, in part: "U.S.
5 Probation Officer Hassan Houstan determined in May 1999 that Mr.
6 Perroton's restitution should be adjusted to $700,000.  His
7 reasoning was that the total loss to Hibernia Bank (now Wells
8 Fargo Bank) was $24.5 million and they recovered $23.8 million,
9 thus leaving a balance of $700,000."  Opp'n, Ex. B.

10 Finally, as discussed above, the restitution obligation was
11 properly reduced to $700,000.  It is interesting to note that
12 since the initial restitution order was imposed on June 21, 1985,
13 until today, the defendant has only paid the sum of $1,700.
14 <u>See</u> Laird Decl., Opp'n Ex. A ¶ 5.

15 Based on the foregoing facts, the Court's determination that
16 the losses suffered by the relevant banks totaled at least $10
17 million was accurate.  The restitution imposed by the Court was
18 for the loss encompassed within the conduct that was the basis of
19 Perroton's conviction.

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///

-11-

**V.   CONCLUSION**

For the reasons stated above, the Court DENIES Perroton's Motion.

IT IS SO ORDERED.

Dated: June 30, 2008



UNITED STATES DISTRICT JUDGE